Andrew Petersen, SBN 016699
HUMPHREY & PETERSEN, P.C.
6063 E. Grant Road
Tucson, AZ 85712
Telephone: (520) 795-1900
apetersen@humphreyandpetersen.com

Mara Cohara (*pro hac vice forthcoming*)
Elizabeth Hatting (*pro hac vice forthcoming*)
Stephanie Bradshaw (*pro hac vice forthcoming*)
LATHROP GPM LLP
2323 Grand Blvd., Suite 800
Kansas City, MO 64108
Telephone: (816) 292-2000
mara.cohara@lathropgpm.com
elizabeth.hatting@lathropgpm.com
stephanie.bradshaw@lathropgpm.com

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| JOSHUA LILLY,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL COMMUNITY COMMUNICATIONS ALLIANCE, et al.,<br><br>Defendants. | Case No. 4:26-CV-00369-JGZ<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DAMAGES AND MEMORANDUM IN SUPPORT** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants[1] move to dismiss

[1] Defendants Global Community Communications Alliance; the Estate of Van of Urantia aka Gabriel of Urantia aka Gabriel of Sedona aka Prince Melfax aka Taliasvan aka Anthony Joseph Delevin; Nancy "Niánn" Emerson Chase; Tiyiendea Dellerba aka Stacy Lee Myszka; Catherine "Centria" Lilly; Celinas Ruth; Soulistic Medical Institute; and Avalon Universal Enterprises, Inc. d/b/a ARC Roofing d/b/a Earth Harmony Builders (collectively,

Plaintiff Joshua Lilly's ("Plaintiff") Complaint for Damages. Plaintiff's claims are barred by the statute of limitations and otherwise fail to state a claim under the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"). This motion is supported by the following memorandum.

**INTRODUCTION**

Plaintiff is a former member of Defendant Global Community Communications Alliance ("GCCA"), a religious community based in Santa Cruz County, Arizona.[2] Plaintiff spent roughly four years in GCCA during his childhood, joining GCCA with his parents in 1990 at the age of 12 and leaving at the age of 16. Plaintiff then voluntarily returned to GCCA as an adult in 2006 before being asked to leave in summer 2016 and—following a brief period of re-entry—leaving for the last time in November 2016.

A large portion of Plaintiff's complaint is devoted to allegations about the history of GCCA, the purported structure of the community and its disciplinary methods, supposed isolation and family separation, and similar allegations spanning the entirety of his intermittent membership in GCCA. But Plaintiff's claims in this case are exclusively based on his adult years in GCCA, and those claims are actually very simple. During his adult years in GCCA, Plaintiff worked as a contractor, helping to design, construct, and otherwise build the community in which he lived. Plaintiff alleges he did not receive independent compensation for that work. Plaintiff now characterizes that contracting work as "forced labor," "trafficking," "peonage," and "involuntary servitude," attempting to shoehorn his allegations into the TVPRA. But those stale, decades-old allegations fail to state any claim for relief against GCCA or the multiple affiliated entities and individual GCCA members that he brings suit against. Dismissal is proper under Rule 12(b)(6) for the following reasons.

***First***, Plaintiff's claims are time barred under the TVPRA's 10-year statute of

---

"Defendants"). Plaintiff also asserts claims against unknown GCCA "Elders" and "Does" who have not yet been served.

[2] For purposes of this Motion, Defendants accept as true Plaintiff's well-pleaded allegations.

limitations. The fact that Plaintiff supposedly did not "discover" that he potentially had a legal cause of action until 2026 does not toll the limitations period.

***Second***, even if Plaintiff's claims were timely, the complaint fails to state a claim under the TVPRA. Count I does not plausibly allege that each Defendant knowingly obtained Plaintiff's labor through a prohibited means. Count II fails to identify a qualifying trafficking act by each Defendant and Count III does not allege that Plaintiff was compelled to work to satisfy a debt as required for peonage. Count IV relies primarily on psychological, social, economic, and spiritual pressures rather than the physical or legal coercion required to establish involuntary servitude. Count V does not plausibly allege that each Defendant knowingly benefited from participation in a venture engaged in a TVPRA violation. Finally, Count VI improperly asserts vicarious liability as a standalone claim and, in any event, does not adequately plead agency, joint-venture, or alter-ego liability.

The Court should dismiss the complaint in its entirety.

## FACTUAL BACKGROUND

Plaintiff was born in November 1978. Compl. ¶ 12. He joined GCCA with his parents in 1990 at the age of about 12. *Id.* He first left GCCA in 1994, when he was approximately 16 years old. *Id.* In 2006, after reconnecting with his family, he voluntarily returned to GCCA with his wife. *Id.* ¶¶ 83-88.

It was this second period of membership that ostensibly gave rise to Plaintiff's claims in this action. After rejoining the community, Plaintiff worked as a licensed general contractor through Earth Harmony Builders—which Plaintiff alleges is a trade name for Avalon Universal Enterprises, Inc. ("Avalon"), owned by GCCA. *Id.* ¶¶ 24, 93. In that role, Plaintiff directed construction of numerous structures on GCCA's property. *Id.* ¶ 93. Plaintiff also worked as a licensed roofing contractor through ARC Roofing—also a trade name for Avalon—from approximately 2007 to 2015. *Id.* ¶¶ 24, 94. One of the facilities that Plaintiff worked on was GCCA's Soulistic Medical Institute ("Soulistic"), a nonprofit hospice and healing center, which opened in 2008. *Id.* ¶¶ 23, 96. In addition to his

construction work, Plaintiff also alleges he performed agricultural work, community kitchen service, and cleaning and maintenance. *Id.* ¶ 101.

Plaintiff alleges he did not receive any wages for the work he performed as a GCCA member. *Id.* ¶¶ 92-101. At a high level, Plaintiff claims that his labor was coerced through various means, such as restrictions on outside communications, mandatory counseling, spiritual discipline, peer reporting through a "chip game," participation in a program known as PIRP, economic dependency, family separation, and shunning. *Id.* ¶¶ 35-78. Plaintiff alleges that the individual defendants—Anthony Joseph Delevin,[3] Nancy "Niánn" Emerson Chase, Tiyiendea Dellerba aka Stacy Lee Myszka, Catherine "Centria" Lilly, and Celinas Ruth—played a part in this coercion. *Id.* ¶¶ 14-21.

Plaintiff was asked to leave the GCCA community in the summer of 2016. *Id.* ¶ 122. Following the death of his child, Plaintiff briefly returned to GCCA in September 2016 but was again ordered to leave just two months later. *Id.* ¶¶ 128-132. Plaintiff left GCCA on November 14, 2016. *Id.* ¶ 132. Plaintiff does not allege that he performed any additional contracting, roofing, or other unpaid labor during that brief two-month period. Plaintiff has not returned to GCCA since his departure. *Id.*

Based on these allegations, Plaintiff asserts six claims under the TVPRA: Count I for forced labor in violation of 18 U.S.C. § 1589; Count II for trafficking with respect to forced labor in violation of 18 U.S.C. § 1590; Count III for peonage in violation of 18 U.S.C. § 1581; Count IV for involuntary servitude in violation of 18 U.S.C. § 1584; Count V for beneficiary liability; and Count VI for vicarious liability. Counts I through V are asserted against all Defendants, while Count VI is asserted only against GCCA, Avalon, and Soulistic.

**CERTIFICATE OF CONFERRAL PURSUANT TO LRCIV 12.1(c)**

Defendants certify that, on September 8, 2026, counsel for Defendants sent an email

[3] Delevin, GCCA's founder, has since passed away, so Plaintiff asserts his claims against Delevin's Estate.

to Plaintiff's counsel stating that Defendants intended to file a motion to dismiss under Rule 12(b)(6) and notifying Plaintiff's counsel of the issues raised in this motion. On September 10, 2026, the parties also met via videoconference. The parties were unable to reach an agreement that the complaint is curable in any part by a permissible amendment. Counsel for Defendants submits this certificate pursuant to LRCiv 12.1(c).

## LEGAL STANDARD

A complaint must contain enough factual matter to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels, conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible only when its factual allegations allow a reasonable inference that the defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678.

The Court accepts well-pleaded facts as true, but it "need not assume, however, that the plaintiff can prove facts different from those alleged in the complaint." *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1220 (D. Ariz. 2003). A complaint also must give each defendant fair notice of the conduct for which that defendant is allegedly liable. *See Ralston v. City of Surprise*, No. CV-25-03462-PHX-SPL, 2026 WL 1034337, at *2 (D. Ariz. Apr. 15, 2026). Pleadings that assert claims against multiple defendants without identifying which defendant engaged in which conduct, or that indiscriminately incorporate all prior allegations into each count, constitute impermissible "shotgun" pleadings. *See id.*

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE TIME BARRED AND NONE OF PLAINTIFF'S ASSERTED TOLLING THEORIES SAVE THEM.

#### A. Plaintiff's Claims Are Barred Under the TVPRA's 10-Year Limitations Period.

Plaintiff's TVPRA claims are subject to the limitations period set forth in 18 U.S.C. § 1595(c), which provides that an action for civil liability under the TVPRA must be

commenced either (1) no later than 10 years after the cause of action arose, or (2) for a person who was a minor when the offense occurred, 10 years after the person reached the age of 18. *See id.*

As an initial matter, to the extent the complaint premises any of Plaintiff's claims on allegations from 1990 to 1994, the period he resided at GCCA as a minor, those claims are clearly time barred.[4] Plaintiff alleges he was born in November 1978 (Compl. ¶ 12); as such, he would have turned 18 in November 1996. The statute of limitations for those claims would have expired in November 2006 (10 years after he reached the age of majority).

Plaintiff's claims arising from his second period of membership in GCCA fare no better. According to the complaint, Plaintiff voluntarily returned to GCCA in 2006, was asked to leave in the summer of 2016, briefly returned in September 2016, and left permanently in November 2016. *Id.* ¶¶ 83-88, 122, 128-132. Plaintiff did not file this action until July 23, 2026. Any TVPRA claim that accrued before July 23, 2016 therefore falls outside the 10-year limitations period. The labor-related allegations on which Plaintiff bases his claims all predate that cutoff. Plaintiff alleges that he performed construction work through Earth Harmony Builders, operated as a roofing contractor through ARC Roofing from approximately 2007 to 2015, and helped build or remodel facilities associated with Soulistic, which opened in 2008. *Id.* ¶¶ 23-24, 93-100. Plaintiff does not allege he performed any additional unpaid construction, roofing, or comparable labor during his brief return to GCCA from September through November 2016. Instead, the allegations from that period concern family matters, custody issues, reentry, expulsion, and alleged shunning. *Id.* ¶¶ 120-132. Because the allegations giving rise to Plaintiff's TVPRA theories ended before July 23, 2016, Counts I through IV are untimely. And because Counts V and VI depend upon an underlying, actionable TVPRA violation, those claims likewise fail.

---

[4] It is unclear if Plaintiff pursues this theory. While he alleges Defendants "coerced" him to perform unpaid labor "[b]eginning with his first period of residency as a child" (Compl. ¶ 92), his forced labor allegations otherwise appear to exclusively relate to work performed as an adult. Regardless, his claims are time barred under either theory.

No doubt anticipating the challenge, Plaintiff spends the last two pages of his complaint attempting to rebut any statute of limitations argument. *See* Compl. ¶¶ 193-200. Plaintiff appears to claim that—although he "was aware he was harmed and abused" (*id.* ¶ 196)—because he did not discover he had a *legal cause of action* until February 2026, the limitations period should be tolled. *Id.* ¶¶ 193-197. In other words, Plaintiff argues that his claims did not accrue for limitations purposes until he "discovered" the legal theories for those claims. This is not the law. Plaintiff also attempts to save his claims through the doctrines of equitable tolling (*id.* ¶ 198) and continuing harm (*id.* ¶¶ 199-200), each of which likewise fails for the reasons discussed below.

**B. Plaintiff's Claims Accrued When He Discovered the Underlying Harm, Not the Legal Theory for His Claims.**

The discovery rule does not save Plaintiff's claims. As an initial matter, courts in this Circuit have concluded that "the discovery rule does not apply to the TVPRA." *Christina T. v. Bellagio LLC*, 806 F. Supp. 3d 1185, 1193 (D. Nev. 2025); *see also C.C. v. Rashid*, No. 2:23-CV-02056-GMN-BNW, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025)). But, even if this Court applies the discovery rule, it should not apply it in the manner Plaintiff suggests.

A claim accrues when the plaintiff is aware (or should be aware) of the existence of and source of the underlying harm—*not* when the plaintiff knows he or she has a legal cause of action. *See Lee v. United States*, 809 F.2d 1406, 1410 (9th Cir. 1987); *United States v. Kubrick*, 444 U.S. 111, 122 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment."); *see also C.C.*, 2025 WL 1785273, at *5 (in holding that the TVPRA does not incorporate the discovery rule, stating "[t]he TVPRA's accrual language does not wait until the plaintiff has 'discovered' his cause of action, but rather commences when the cause of action arose"). Put differently, a statute of limitations is "triggered by [a claimant's] knowledge of the transaction that constituted the alleged

violation, not by their knowledge of the law." *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985). Indeed, "[a] different rule would require insufficient diligence on the part of potential claimants." *Lee*, 809 F.2d at 1410.

Here, Plaintiff's allegations establish that he knew the *facts* underlying his claims long before February 2026, which is when he claims he learned he might have a legal case. Compl. ¶ 196. Plaintiff himself admits that he already knew he had been "harmed and abused" at this point. *Id.* Plaintiff alleges he worked without wages, generated revenue for GCCA through his contracting and roofing work, experienced various purported "systems of coercion," and believed that leaving GCCA would jeopardize his family relationships and community ties. *Id.* ¶¶ 35-78, 93-101, 110-114. By the time he permanently left GCCA in November 2016, he necessarily knew who allegedly imposed those conditions, what work he had performed, and the circumstances under which he claims that work occurred. *Id.* ¶¶ 116-132. And, indeed, it stands to reason that someone would know whether they were working without getting paid; this is not a covert or hidden injury.

Plaintiff may not have discovered until February 2026 that he had a potential legal cause of action—but this simply does not matter. This alleged discovery concerned legal terminology, not Plaintiff's injury, its cause, or the relevant actors. The law is clear that this does not postpone accrual.

### C. Plaintiff Does Not Plausibly Allege Equitable Tolling Because He Does Not Allege Diligence or an Extraordinary Impediment.

Equitable tolling requires both diligent pursuit of the plaintiff's rights and an extraordinary circumstance that prevented timely filing. *See Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 255 (2016). The Ninth Circuit requires reasonable diligence throughout the period the plaintiff seeks to toll, including after the asserted impediment ends. *See Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc).

The complaint alleges only that, "as a result of being a victim of trafficking," Plaintiff faced unspecified extraordinary circumstances that prevented him from pursuing his legal

remedies. Compl. ¶ 198. It does not identify what prevented him from consulting counsel after his final departure in November 2016, what efforts he made to investigate his rights over the next decade, or when the supposed impediment ended. Nor does it explain how an external circumstance prevented him from pursuing his claims while he was helping others leave GCCA. *See id.* ¶¶ 132, 134. These conclusory allegations do not plausibly allege diligence or an extraordinary impediment.

### D. Later Events Do Not Automatically Constitute "Continuing Harm" Rendering Every Earlier Act Timely.

In his final effort to save his claims, Plaintiff invokes the continuing harm doctrine, alleging that Defendants' "pattern" of "ongoing tortious conduct" continued through November 2016. Compl. ¶¶ 199-200. But related events do not necessarily constitute a single continuing violation, and "mere 'continuing impact from past violations is not actionable." *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982) (quoting *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 760 (9th Cir. 1980)); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112-15 (2002) (distinguishing discrete acts from conduct that collectively constitutes a single violation).

The complaint alleges materially different conduct occurring at different times throughout Plaintiff's off-and-on association with GCCA. Plaintiff's earlier allegations concern the labor that forms the basis of his TVPRA claims, including his construction and roofing work for Avalon and his remodeling work associated with Soulistic. *Id.* ¶¶ 93-100. Those allegations principally relate to work performed between 2007 and 2015 and, at the latest, before Plaintiff's initial departure from GCCA in the summer of 2016. Plaintiff does not allege he performed additional unpaid labor during his brief return to GCCA from September through November 2016. Plaintiff's later allegations, as discussed, concern family separation, custody proceedings, reentry, his expulsion in November 2016, and subsequent "shunning." *Id.* ¶¶ 116-135. Those events may have arisen from the same broader relationship between Plaintiff and GCCA, but they do not transform years of

discrete, completed labor into a single continuing violation extending through the date of Plaintiff's final departure. The presence of some alleged conduct within the limitations period does not revive claims arising from earlier, completed conduct. *See Lundstrom v. Holiday Hosp. Franchising, LLC*, No. 1:22-cv-00056, 2023 WL 4424725, at *10 (D.N.D. May 22, 2023) (barring portions of TVPRA claims based on trafficking occurring more than 10 years before suit); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 710 (E.D. Mich. 2020) (holding that TVPRA claims arising from conduct outside § 1595(c)'s 10-year period were untimely).

Plaintiff's claims are time barred in their entirety.

## II. EACH CLAIM FAILS FOR ADDITIONAL, INDEPENDENT REASONS.

### A. Count I Fails Because Plaintiff Does Not Plausibly Allege That Each Defendant Knowingly Obtained His Labor Through a Prohibited Means.

Count I alleges forced labor under 18 U.S.C. § 1589. To state such a claim, Plaintiff must plausibly allege that each Defendant knowingly obtained his labor or services through one of the prohibited means identified in the statute, including threats of serious harm or physical restraint, abuse or threatened abuse of legal process, or a coercive scheme. *See* 18 U.S.C. § 1589. The statute requires more than allegations that a defendant was aware the plaintiff worked or that his work was unpaid. The plaintiff must plead facts showing both that the defendant knew of the allegedly coercive conduct and that the labor was obtained as a result of that conduct. *See Martínez-Rodríguez v. Giles*, 31 F.4th 1139, 1155-57 (9th Cir. 2022); *United States ex rel. Lesnik v. ISM Vuzem d.o.o.*, 112 F.4th 816, 821 (9th Cir. 2024).

The complaint does not meet that standard. First, although Plaintiff alleges that his unpaid labor was the product of family separation, economic dependence, the PIRP program, legal and custody proceedings, shunning, and other forms of pressure, he largely attributes those allegations to "Defendants" collectively. Compl. ¶¶ 139-142. The complaint seldom identifies which Defendant engaged in particular conduct, what labor that

Defendant allegedly obtained, or how that Defendant used a prohibited means to obtain it. Such generalized allegations fail to establish liability on a defendant-by-defendant basis.

Second—and more fundamentally—the complaint conflates allegations that Plaintiff felt unable to leave GCCA with allegations that Defendants obtained specific labor through prohibited coercion, as required under § 1589. The complaint does not allege that Plaintiff refused or attempted to refuse a particular work assignment, that a Defendant threatened a prohibited consequence if he declined, or that he performed labor because of such a threat. Instead, the allegations describe an allegedly coercive communal environment without plausibly connecting any particular Defendant's conduct to the procurement of Plaintiff's labor. The Ninth Circuit rejected a similar theory in *Headley v. Church of Scientology International*, where the plaintiffs challenged the "discipline, lifestyle, and familial constraints" imposed by their religious community, but the court concluded that the defendants had not obtained the plaintiffs' labor "by means of" those features. 687 F.3d 1173, 1180 (9th Cir. 2012). Indeed, as in *Headley*, Plaintiff's allegations concern community practices, family relationships, and social pressures that allegedly made remaining in GCCA difficult to navigate, but he does not plausibly allege that Defendants obtained his labor through those practices. To the contrary, many of the alleged coercive features ultimately led Plaintiff to leave GCCA altogether, effectively ending any labor he provided.

In addition to these overarching pleading defects, Plaintiff's specific theories of § 1589 liability suffer from independent deficiencies. The complaint repeatedly invokes statutory language like "force," "serious harm," "abuse of legal process," and a "scheme, plan, or pattern," but it does not allege facts plausibly showing that any Defendant knowingly obtained Plaintiff's labor through any such means. The allegations are particularly deficient with respect to Plaintiff's theories under §§ 1589(a)(1) and (a)(3). Section 1589(a)(1) addresses force, threats of force, physical restraint, and threats of physical restraint. But the complaint alleges no assault, physical confinement, bodily

restraint, threat of violence, or comparable form of physical force. Allegations of spiritual authority, economic dependence, social pressure, surveillance, or fear of family separation do not plausibly establish coercion under § 1589(a)(1). Second, Plaintiff fails to plausibly allege abuse or threatened abuse of legal process under § 1589(a)(3). The complaint relies on a custody document signed after Plaintiff's return to GCCA in 2006, legal proceedings initiated in 2016, a financial obligation purportedly imposed as a condition of re-entry, and an exit statement signed after Plaintiff was instructed to leave the community. Compl. ¶¶ 88, 120-22, 141. But Plaintiff does not allege that any Defendant used or threatened legal process to compel him to perform labor, nor does he identify any labor that resulted from such a threat. These allegations concern family disputes, re-entry conditions, and Plaintiff's eventual departure from GCCA. They do not plausibly allege that legal process was used to obtain labor.

Count I fails to state a claim and should be dismissed.

### B. Count II Fails Because Plaintiff Does Not Identify a Qualifying Trafficking Act By Each Defendant.

Count II alleges trafficking with respect to forced labor in violation of 18 U.S.C. § 1590. Plaintiff alleges that Defendants recruited him back to GCCA in 2006 through a campaign by family members, induced him and his wife to rejoin, required him to surrender his assets, harbored him within the community, and ultimately obtained his labor for GCCA and its affiliated entities. Compl. ¶¶ 145-151.

Section 1590 prohibits specific acts, including knowingly recruiting, harboring, transporting, providing, or obtaining a person for labor or services in violation of the TVPRA. *See* 18 U.S.C. § 1590(a). Plaintiff therefore must plausibly allege that each Defendant committed at least one qualifying act with the required knowledge.

Here, this claim relies almost entirely on collective allegations. Plaintiff alleges that all Defendants recruited, harbored, transported, provided, and obtained him for labor and services. But the factual allegations do not support that sweeping assertion. For example,

the recruitment allegations primarily concern Plaintiff's mother, Lilly[5], and his return to GCCA in 2006. Plaintiff alleges Lilly cultivated a relationship with his wife and encouraged her to join GCCA, prompting his decision to rejoin the community. *Id.* ¶¶ 85-87, 146-147. Those allegations are insufficient to state a claim against either Lilly or GCCA because Plaintiff does not plausibly allege that Lilly or GCCA knowingly "recruited" him for purposes of obtaining unlawful labor or services. But even putting aside the viability of those allegations against Lilly or GCCA, they do not allege recruitment by any of the other Defendants.

The allegations against Ruth, Soulistic, and Avalon likewise do not establish trafficking. Ruth's alleged conduct concerns custody documents and proceedings associated with Plaintiff's departure. *Id.* ¶¶ 21, 120-122. The allegations concerning Soulistic and Avalon concern facilities and businesses through which Plaintiff allegedly performed work. *Id.* ¶¶ 23-24, 93-95. Those allegations do not establish that they knowingly recruited, harbored, transported, provided, or obtained Plaintiff for labor in violation of the TVPRA.

Nor does the complaint adequately plead harboring. Although Plaintiff alleges he resided at GCCA and describes restrictions on communication and movement, he does not identify which Defendant allegedly harbored him, what conduct constituted harboring, or facts giving rise to the requisite knowledge. *Id.* ¶¶ 148-149. Because the complaint does not connect each Defendant to a qualifying trafficking act and an underlying TVPRA violation, Count II should be dismissed.

**C. Count III Fails Because Plaintiff Does Not Allege He Was Compelled to Work to Satisfy a Debt.**

Count III alleges peonage in violation of 18 U.S.C. § 1581. Plaintiff claims GCCA created a form of debt bondage through the PIRP program by assigning participants (including Plaintiff) an alleged $50,000 obligation that became payable if a member left GCCA or sought to return after departure. Compl. ¶ 155. Plaintiff further alleges that

---

[5] "Lilly" refers to Defendant Catherine Lilly, Plaintiff's mother, not the Plaintiff himself.

Defendants deprived him of independent financial resources, required him to surrender assets and revenue, and compelled him to continue working while this obligation remained outstanding. *Id.* ¶¶ 155-158.

This claim fails because peonage requires *labor* compelled because of an actual or purported debt. *See Clyatt v. United States*, 197 U.S. 207, 215 (1905) ("The basal fact is indebtedness."); *United States v. Reynolds*, 235 U.S. 133, 144, 146 (1914) (same). The existence of a debt, standing alone, is not enough. Plaintiff must plausibly allege that his labor was required to satisfy that debt.

The allegations do not meet this requirement. Plaintiff points to the alleged $50,000 PIRP obligation. Compl. ¶¶ 60-62, 156. But according to the complaint, that obligation functioned as a condition of departure or possible reentry. *Id.* ¶ 155. Plaintiff does not allege that labor reduced the obligation, that continued work discharged the debt, or that any Defendant required him to work because he owed money. Peonage requires labor compelled to satisfy indebtedness. *See Clyatt*, 197 U.S. at 215-16. The complaint does not allege facts showing that Plaintiff worked because of a debt or that any Defendant compelled labor on that basis.

Plaintiff's own allegations underscore the problem. He alleges that much of the labor underlying his claims occurred years before he entered PIRP in approximately 2013. *Id.* ¶¶ 92-105. Therefore, as pleaded, the alleged debt arose well after much of Plaintiff's work was performed, making it difficult to infer that the earlier labor was somehow performed to satisfy that debt. Count III fails to state a claim and must be dismissed.

### D. Count IV Fails Because Plaintiff Does Not Plausibly Allege Involuntary Servitude.

Count IV alleges involuntary servitude in violation of 18 U.S.C. § 1584. Plaintiff alleges that Defendants held him in involuntary servitude from 2006 to 2016 through isolation, surveillance, economic dependency, family separation, and other forms of social, psychological, and legal coercion that he claims left him unable to leave GCCA. Compl. ¶¶

162-165.

But these allegations do not plausibly state a claim under § 1584. This statute addresses an even narrower category of conduct than Plaintiff's forced-labor claim under § 1589. Section 1584 requires allegations of physical coercion or coercion through law or legal process, not merely psychological, social, economic, or spiritual pressure. *See United States v. Kozminski*, 487 U.S. 931, 944, 948-53 (1988). Here, the complaint relies primarily on allegations of isolation, economic dependence, community pressure, spiritual authority, surveillance, shunning, family separation, and fear of losing relationships. *See* Compl. ¶¶ 163-65. Even accepting those allegations as true, they do not plausibly establish the type of physical or legal coercion required to state a claim for involuntary servitude under § 1584.

Plaintiff repeatedly uses words like "force," "physical," and "legal coercion," but those are mere labels and conclusions that are not supported by the well pleaded facts. The complaint does not describe any assault, confinement, physical restraint, threats of bodily injury, or other forms of physical pressure. Nor does Plaintiff plausibly allege that legal process compelled him to perform labor. The legal proceedings and custody issues described in the complaint largely arose near or after Plaintiff's departure from GCCA. Those allegations do not plausibly establish that legal process compelled Plaintiff to perform years of prior construction and roofing work. Count IV should be dismissed for failure to state a claim.

### E. Count V Fails Because There Is No Predicate TVPRA Violation and Plaintiff Does Not Plausibly Plead Beneficiary Liability.

Count V alleges beneficiary liability under 18 U.S.C. § 1595(a). To state a claim for beneficiary liability, Plaintiff must plausibly allege that each Defendant knowingly benefited from participation in a venture that the Defendant knew or should have known engaged in a TVPRA violation. *See* 18 U.S.C. § 1595(a). Beneficiary liability is thus not imposed merely because a defendant was affiliated with GCCA or received some indirect benefit from Plaintiff's work.

As a threshold matter, because Plaintiff cannot state an underlying TVPRA violation, this claim necessarily fails. Even putting that aside, however, Plaintiff's vague, conclusory allegations are insufficient to state a claim for beneficiary liability. Plaintiff again relies largely on collective allegations rather than specific facts, alleging generally that GCCA, its "leadership," and its "operations" constituted a venture, that "[e]ach Defendant took part" in it, and that each Defendant benefited and knew or should have known of the underlying violations. Compl. ¶¶ 169-171. Those allegations largely mirror the statutory language without providing any additional facts. The deficiencies are particularly apparent as to Ruth, Soulistic, and Avalon. The allegations concerning Ruth focus on legal services and custody-related proceedings (*id.* ¶¶ 21, 171(d)), yet do not identify any concrete benefit she received from Plaintiff's labor. Soulistic allegedly occupied buildings Plaintiff remodeled (*id.* ¶ 23), and Avalon allegedly operated businesses through which he worked (*id.* ¶ 24), but receipt of a benefit alone is not enough. The Complaint must plausibly allege participation in the alleged venture and actual or constructive knowledge of the underlying TVPRA violation. It does not do so.

Count V should be dismissed for failure to state a claim.

### F. Count VI Fails Because There Is No Predicate TVPRA Violation and Plaintiff Does Not Plausibly Allege a Basis for Vicarious Liability.

Count VI does not allege an independent TVPRA violation. Instead, it seeks to impose vicarious liability on GCCA, Avalon, and Soulistic for the alleged TVPRA violations. Plaintiff alleges that these entities are liable under theories of agency, joint venture, and alter ego because of overlapping leadership, shared operations, coordinated management, common ownership, and alleged participation in a unified venture. Compl. ¶¶ 176-185

Count VI is not an independent cause of action; rather, it merely invokes theories through which liability for an underlying violation may be attributed to another party. Its viability thus depends both on a predicate violation and on allegations satisfying the

elements of agency, joint-venture, or alter-ego liability. *See Meyer v. Holley*, 537 U.S. 280, 285-86 (2003) (explaining that traditional agency principles govern vicarious liability under federal tort statutes).

Like Count V, this claim necessarily fails because Plaintiff cannot state an underlying TVPRA violation. Plaintiff also fails to plausibly allege facts to support any of his vicarious liability theories. His agency theory fails because the complaint does not identify an underlying violation committed on behalf of a principal within the scope of an agency relationship. Count VI alleges that the individual Defendants acted as GCCA's agents because they held leadership roles and managed operations. Compl. ¶¶ 178-79. But allegations that individuals held leadership positions in multiple organizations do not establish that conduct undertaken for one entity should be attributed to another.

Plaintiff's joint-venture theory likewise fails. The complaint conclusorily alleges overlapping operations and shared interests but does not plausibly allege any agreement, common purpose or interest, equal right of control, or profit-and-loss sharing, as required under Arizona law. *See Est. of Hernandez v. Flavio*, 930 P.2d 1309, 1312 (Ariz. 1997). Similarly, Plaintiff's alter-ego theory rests primarily on allegations of overlapping leadership and integrated operations. Compl. ¶¶ 32, 172, 184. But alter-ego liability under Arizona law requires unity of control such that separate personalities cease to exist and observing the corporate form would sanction fraud or promote injustice. *See Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991). The complaint does not plead facts demonstrating the degree of unity of control necessary to disregard separate corporate identities, nor does it plausibly allege that respecting corporate separateness would work an injustice.

For all of these reasons, Count VI must be dismissed.

## CONCLUSION

Plaintiff's claims are time barred. And his stale, decades-old allegations otherwise fail to state a claim for relief. Defendants respectfully request that the Court grant this

motion, dismiss Plaintiff's claims in their entirety with prejudice, and enter such further relief as the Court deems just and proper.

Dated: September 11, 2026

Humphrey & Petersen, P.C.

By: _/s/ Andrew Petersen_
Andrew Petersen
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, I emailed the attached document to:

Kristina Aiad-Toss
Brian Colón
Pilar Borneo
Meagan Verschueren
Katie Llamas
Samantha Drumm
SINGLETON SCHREIBER
6501 Americas Pkwy #670
Albuquerque, NM 87110
ktoss@singletonschreiber.com
bcolon@singletonschreiber.com
pborneo@singletonschreiber.com
mverschueren@singletonschreiber.com
kllamas@singletonschreiber.com
sdrum@singletonschreiber.com
*Attorneys for Plaintiff*

_/s/ Anna McCollum_